# BOSWORTH v. ST. LOUIS TERMINAL RAILROAD ASSOCIATION.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 211. Submitted January 25, 1899. — Decided May 1, 1899.

A claim was presented against the estate of the Peoria and St. Louis Railway Company in the hands of a receiver, which the receiver disputed. After reference to a master, and his report, stating the facts, an order was entered directing the receiver to pay the claim. He appealed from this decision to the Court of Appeals. The record on appeal contained the order of reference, the findings of fact, the report of the master, and the exceptions of the receiver. The Court of Appeals directed the appeal to be dismissed. *Held,* That the proper entry should have been an affirmance of the decree rather than a dismissal.

A receiver may defend, both in the court appointing him and by appeal, the estate in his possession against all claims which are antagonistic to the rights of both parties to the suit.

He may likewise defend the estate against all claims which are antagonistic to the rights of both parties to the suit, subject to the limitation that he may not in such defence question any order or decree of the court distributing burdens or apportioning rights between the parties to the suit, or any order or decree resting upon the discretion of the court appointing him.

He cannot question any subsequent order or decree of the court distributing the estate in his hands between the parties to the suit.

He may appeal from an order or decree which affects his personal rights, provided it is not an order resting in the discretion of the court.

His right to appeal from an allowance of a claim against the estate does not necessarily fail when the receivership is terminated to the extent of surrendering the property in the possession of the receiver.

THE facts in this case are briefly these: On September 21, 1893, the Mercantile Trust Company, of New York, filed its bill of complaint in the Circuit Court of the United States for the Southern District of Illinois against the Chicago, Peoria and St. Louis Railway Company, praying foreclosure of a mortgage and the appointment of a receiver. On the same day an order was entered appointing the present appellant receiver of that road. Among other things the order of ap-

pointment directed the receiver to pay "all claims for materials and supplies which have been incurred in the operation and maintenance of said property during the six months last past, and all ticket trackage traffic balances due from said railroad." The plaintiff, the Mercantile Trust Company objected to this part of the order, but after argument the objection was overruled. On May 27, 1895, the Terminal Railroad Association of St. Louis filed an intervening petition, claiming that it had performed labor and furnished materials for the defendant railroad company within the six months named in the order of appointment. The receiver answered, denying the claim. The matter was referred to a master, who found in favor of the petitioner, and on July 30, 1896, the following decree was entered:

"It is therefore ordered, adjudged and decreed by the court that the receiver herein pay to the intervenor, the Terminal Railroad Association of St. Louis, the said sum of eight thousand one hundred and sixty-two dollars and eleven cents ($8162.11) out of the income of said receivership, if any such income is in his hands, and in case he has not the funds in hand for this purpose, it is ordered, adjudged and decreed that the same be paid out of the proceeds of the sale of the mortgaged premises in preference to the mortgage debt, and until paid the same is hereby declared a lien upon the said mortgage estate superior to the lien of the mortgage herein."

The receiver appealed from this decree to the Court of Appeals, but on June 8, 1897, that court dismissed the appeal. 53 U. S. App. 302. Thereafter a certiorari was issued, and under that writ the case was brought to this court.

*Mr. Bluford Wilson* and *Mr. Philip Barton Warren* for appellant.

*Mr. M. F. Watts, Mr. J. E. McKeighan, Mr. Shepard Barclay* and *Mr. Samuel P. Wheeler* for appellee.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

Upon the record as it was filed in the Court of Appeals, and independently of other considerations, its decision was manifestly erroneous. A claim was presented against the estate in the hands of the receiver, which he disputed. A part of his contention, as appears from the exceptions, was, specifically, that the debt, whatever its amount, was due from the Jacksonville Southeastern line and not from the mortgagor, the Chicago, Peoria and St. Louis Railway Company. After reference to a master, and his report stating the facts, an order was entered directing the receiver to pay the claim. The reference, the findings, the report of the master, the exceptions of the receiver, were all set forth. So that in the record, as it came to the Court of Appeals, there was a denial on the part of the receiver of any liability of the estate in his possession to the petitioner, and a decree adversely thereto. That alleged liability he was the proper person to contest, and to contest both in the court which had appointed him receiver, and on appeal in the appellate court. But the Court of Appeals, in its opinion directing the dismissal, makes this statement of facts, page 305 :

"The contention of the receiver is thus stated in the brief of his counsel : 'The question thus presented to this court for determination is one as to the displacement of vested contract liens by unsecured creditors. There is no controversy as to the labor having been performed or the materials furnished within the six months next prior to the appointment of the receiver of the insolvent corporation, or as to the value of the same. The only controversy is as to whether or not the appellee is entitled, on its petition and proof made thereunder, to have the vested lien of the mortgagee displaced to the extent of his claim.' He insists that the provision in the decree appointing a receiver providing for the payment of certain claims as preferential created no vested right; that within our ruling in *Mather Humane Stock Transportation Company* v. *Anderson*, 46 U. S. App. 138, the decree in that regard was interlocutory and is not controlling of the subsequent action of the court; that within the doctrine declared in *Turner* v. *The Indianapolis, Bloomington and Western Railway Com-*

*pany*, 8 Bissell, 315 ; *Fosdick* v. *Schall*, 99 U. S. 235 ; *Union Trust Company* v. *Souther*, 107 U. S. 591; *Burnham* v. *Bowen*, 111 U. S. 776; *Union Trust Company* v. *Illinois Midland Railway Company*, 117 U. S. 434; *Wood* v. *Guarantee Trust and Safe Deposit Company*, 128 U. S. 416; *Kneeland* v. *American Loan and Trust Company*, 138 U. S. 509; *Thomas* v. *Western Car Company*, 149 U. S. 111; *Farmers' Loan and Trust Company* v. *Green Bay, W. & St. P. Railway Company*, 45 Fed. Rep. 664, before a claim can be deemed to be preferential to the mortgage debt there must be first established a diversion of income from the payment of operating expenses to the payment of interest; and that, failing diversion, there can be no restoration.   The broad ground is taken that a court of equity, assuming at the request of a trustee the operation of a railway, has not the right to provide out of the income or the corpus of the road, for the payment of operating expenses incurred within a limited time prior to the suit unless there has been diversion of income, and then only to the extent of such diversion."

And again, page 307 :

" The record here is not complete.   There has been brought to this court only so much of the record as is thought to bear upon the particular question which the receiver desired to present.   It was, however, conceded at the argument that prior to the decree appealed from the railway had been sold under decree of sale, and had passed out of the possession of the receiver and into the possession of the purchaser, and that the receiver had not in hand any moneys with which to pay the debt adjudged."

Even with the change made in the condition of the case by these admissions, we are of opinion that the proper entry should have been an affirmance of the decree rather than a dismissal.   A dismissal implies that the receiver had no right to appeal ; whereas we are of opinion that he was the proper party to take such appeal, was entitled to a hearing in the Court of Appeals, and also bound the estate in his possession as receiver by any admission of facts.   Such admission in this case went so far as to relieve the appellate court from any

necessity of inquiry as to the merits of the claim, but it was made after the case had been taken to the appellate court, and did not affect the rightfulness of the appeal.

It becomes important to consider what are the rights and duties of a receiver in respect to claims made against the estate in his possession. It is often said that he is merely the hand of the court which has appointed him; and for certain purposes that is not an inapt expression. He is charged with the duty of carrying into execution the orders of that court, but he is also a custodian of property, and has by virtue of such custody certain obligations to the parties owning or interested therein.

First. A receiver may defend, both in the court appointing him and by appeal, the estate in his possession against all claims which are antagonistic to the rights of both parties to the suit. For instance, he may thus contest a claim for taxes, because if valid they are superior to the rights of both parties; in a case like the present, superior to the rights of mortgagor and mortgagee.

Second. He may likewise defend the estate against all claims which are antagonistic to the rights of either party to the suit, subject to the limitation that he may not in such defence question any order or decree of the court distributing burdens or apportioning rights between the parties to the suit, or any order or decree resting upon the discretion of the court appointing him. As this is a matter specially pertinent to the present controversy it may be well to consider briefly the scope of this proposition: A suit is brought by a mortgagee to foreclose his mortgage, and a receiver is appointed to take possession of the mortgaged property. The right to have a decree of foreclosure and sale is an absolute right on the part of the mortgagee, flowing from a breach of the conditions in the mortgage. But the appointment of a receiver is a matter resting largely in the discretion of the court — not, of course, an arbitrary but a legal discretion — and depending not simply upon the breach of a condition in the mortgage, but also upon the question of relative injury and benefit to the parties and the public by the taking of the property out of the

possession of the mortgagor and placing it in the hands of a receiver. In appointing a receiver the court has a right, within certain recognized limits, to prescribe the terms and conditions of the appointment. A receivership is not essential to a foreclosure and sale, and the court is charged, when an application therefor is made, with the duty of inquiring whether, under all the circumstances, considering the interests of the parties and the public, it is wise and proper to take possession of the property. It may in its judgment be necessary to appoint a receiver without prescribing any terms. It may be that the interests of the parties or the public require that the appointment shall be made subject to certain conditions. Now, these conditions, whatever they may be, are beyond the challenge of the receiver. He may not say directly or indirectly, " I accept the appointment; I take charge of the property, but I repudiate the terms and conditions imposed on the receivership." Whether under the present state of the statutory law in reference to appeals any review can be had of the terms of such an order, it is clear that a receiver, whose rights spring from the appointment, cannot be heard to question them.

Third. Neither can he question any subsequent order or decree of the court distributing the estate in his hands between the parties to the suit. It is nothing to him whether all of the property is given to the mortgagee or all returned to the mortgagor. He is to stand indifferent between the parties, and may not be heard either in the court which appointed him, or in the appellate court, as to the rightfulness of any order which is a mere order of distribution between the parties. In this connection it must be noticed that an intervenor, although for certain purposes recognized as a party to the litigation, is not such a party as comes within the scope of the limitation just announced. He is one who comes into the litigation asserting a right antagonistic or superior to that of one or both of the parties thereto, and a receiver, who represents, so far as the property is concerned, the interests of the parties, may rightfully challenge his claim; provided that in such challenge he does not question any or-

ders of the court heretofore referred to. Let us take some illustrations : A suit is brought to foreclose a mortgage, a receiver is appointed, and the mortgaged property taken possession of. A party intervenes, asserting that he has a claim against the mortgagor and the property, but conceding that it is subordinate to the claim of the plaintiff mortgagee. With that concession, the mortgagee stands perfectly indifferent to the question whether the claim be allowed or not. Still, it cannot be doubted that in such a case the receiver, holding the property, against which a claim is made, can defend; and defend not only in the court appointing him, but also by appeal. In that defence he not only represents, it may be said, the mortgagor's interests, but also protects the property in his possession.

Take another case : An intervenor presents a claim against the mortgaged property which the mortgagor admits. There is, therefore, no defence to be interposed in behalf of the defendant mortgagor, no protection to be sought for the property, and the only question is whether such claim, admitted by the mortgagor, is to be satisfied out of the mortgaged property prior to the claim of the mortgagee. The latter is the only party who has an antagonistic relation to the intervenor. Now, the receiver, who represents both mortgagee and mortgagor, both plaintiff and defendant, so far as the custody of the property is concerned, is entitled to defend against this claim of priority made by the intervenor, and may defend both in the court appointing him, and also by appeal. It is true in such defence he may not be heard to say that the terms and conditions imposed in the order of his appointment were improper, but he may defend on the proposition that the claim presented does not come within those terms and conditions. Whatever right, if any, the mortgagee plaintiff may have to question, in resisting such claim, the validity of the terms of the appointment, the receiver cannot do so; and the only defence he can make is that the claimed priority has no foundation in the terms of the order; or, if it be a matter entirely outside of those terms, that it has no foundation in any recognized legal or equitable principle.

In the case at bar one defence, as shown by the exceptions taken to the report of the master, was that the claim of the intervenor was not against the estate, but against some third party. That defence the receiver had a right to make. We do not mean that he alone can act; we do not stop to inquire what rights either party to the suit may have in this respect. All we now decide is that the receiver is a proper party to make the defence. And when he alone makes it, when he carries on the litigation in his own name as receiver, then as the representative and custodian of the estate he can, subject to the supervision of the court, bind it by admissions made in good faith in the progress of the litigation. And as in the appellate court, after the appeal had been perfected, he being the only party to the appeal, admitted that it was a just claim against the mortgagor and within the priority over the mortgage prescribed in the order of appointment, his admission showed that the allowance was right, and that the decree ought to be affirmed. But still, until that admission was made, there was a pending dispute, and he was a proper person to appeal from the allowance.

Fourth. He may appeal from an order or decree which affects his personal rights, provided it is not an order resting in the discretion of the court. Thus he may not appeal from an order discharging or removing him, or one directing him in the administration of the estate, as for instance to issue receiver's certificates, to make improvements, or matters of that kind, all of which depend on the sound discretion of the trial court. He may appeal from an order disallowing him commissions or fees, because that affects him personally, is not a matter purely of discretion, and does not delay or interfere with the orderly administration of the estate.

Fifth. His right to appeal from an allowance of a claim against the estate does not necessarily fail when the receivership is terminated to the extent of surrendering the property in the possession of the receiver. It is a common practice in courts of equity, anxious as they are to be relieved of the care of property, to turn it over to the parties held entitled thereto, even before the final settlement of all claims against it, and at

the same time to leave to the receiver the further defence of such claims, the party receiving the property giving security to abide by any decrees which may finally be entered against the estate.　An admission that the railway property had been turned over to the purchaser is not therefore of itself conclusive against the right of the receiver to appeal.　And the fact that the trial court allowed the appeal must in the appellate court be taken, in the absence of other evidence, as sufficient authentication that such reservation of authority had been made in the order directing the surrender of the property.

It seems unnecessary to say more.　We have indicated, so far as it can safely be done by general propositions, the powers of a receiver in respect to appellate proceedings.　We are of opinion that the decree of the Court of Appeals should have been one of affirmance, and to that extent it is modified. Under the admissions of the receiver the cost of the appellate proceedings should be paid by him, and this notwithstanding, in our judgment, the formal order of the Court of Appeals dismissing the case was incorrect.

*The judgment of the Circuit Court is affirmed at the cost of the appellant.*